305 So.2d 497 (1974)
STATE of Louisiana
v.
Felix HATCH, Jr.
No. 54497.
Supreme Court of Louisiana.
December 2, 1974.
Rehearing Denied January 15, 1975.
*499 Alex W. Wall, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Bryan E. Bush, Jr., Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
On December 19, 1972, a LSU coed was the victim of rape and armed robbery. The defendant, Felix Hatch, Jr. was later charged with the armed robbery, convicted and sentenced to serve 30 years in the custody of the Louisiana Department of Corrections. He has appealed, presenting 13 perfected Bills of Exceptions for our review.
Bill of Exceptions No. 1.
The defense filed a Motion to Quash on the ground that the jury venire did not include women.
A majority of this Court has consistently ruled that Article VII, § 41 of the Constitution and Article 402 of the Code of Criminal Procedure do not violate the United States Constitution.[1] State v. Baker, La., 288 So.2d 52 (1973). The Bill is without merit.
Bills of Exceptions Nos. 2 and 3.
At the trial the defense objected to the State's introduction into evidence of the clothing worn by the victim and to the testimony by the East Baton Rouge coroner establishing the fact that the victim had been raped.
*500 The defendant argues in brief that the rape evidence should have been limited to the victim's testimony. The other rape evidence, it is argued, was irrelevant and prejudicial.
The State argues that evidence of the rape is admissible as part of the res gestae, governed by LSA-R.S. 15:447, 15:448. In support of its contention, the State refers this Court to State v. Williams, 263 La. 755, 269 So.2d 232 (1972).
We find no need to rely upon that argument, and we pretermit a discussion of the applicability of the res gestae statutes, for we think there is an independent reason for the admission of the evidence. The defendant was on trial for the crime of armed robbery, LSA-RS 14:64, defined as follows:
"A. Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."
Force or intimidation being an essential element of the crime of armed robbery, the State had the burden of proving this element beyond a reasonable doubt. For this purpose, the victim's clothing, which the assailant cut off of her with a large knife, and the testimony of the coroner, corroborating the victim's story that she had been raped prior to the robbery, were relevant.
Furthermore, their probative value warranted their introduction notwithstanding the coincident prejudicial effect.
For this reason, these bills lack merit.
Bills of Exceptions No. 4.
During trial, the State presented testimony and photographic evidence concerning the details of the corporeal line-up at which the defendant was positively identified. This bill was reserved when the trial court overruled defendant's objection to this evidence.
The argument is made that only the fact that the victim made an out-of-court identification of the defendant should be admissible, and that the presentation of the details surrounding the line-up was prejudicial.
This argument does not have merit. The line-up was not conducted in an improper manner, and the facts and evidence concerning that identification procedure were relevant and admissible to show that the victim's in-court identification was not tainted.
Bills of Exceptions Nos. 5 and 6.
These bills will be discussed together as they both relate to the testimony by Sergeant Engelhorn, State witness, to the effect that a search warrant had been issued in connection with another crime for which the defendant was under investigation. Bill No. 5 was reserved when the trial court overruled the defendant's objection to the testimony. Bill No. 6 was reserved to the trial court's denial of defendant's motion for a mistrial, premised on the contention that the assistant district attorney had presented evidence of other crimes allegedly committed by the defendant, in violation of the provisions of Article 770 of the Code of Criminal Procedure.
Our examination of the record reveals that these bills, which resulted from confusion on the part of the witness, are without merit. Prior to trial, through a Bill of Particulars, the defense attorney had been informed that no search warrant had been issued in the investigation of this armed robbery. On cross-examination of Sergeant Engelhorn, however, that witness responded affirmatively when asked by the defense if a warrant had been issued. The defense counsel then continued questioning the officer to present before the jury the fact that no physical evidence linking the defendant to the instant case had been discovered, despite execution of a warrant.
This exchange conveyed erroneous information to the jury, and under these circumstances *501 the State was entitled to go into the matter in an attempt at clarification. LSA-R.S. 15:281 allows redirect examination on the subject matter raised by cross-examination and for the purpose of explaining statements elicited on cross-examination.
The subject of the search warrant had been introduced into the case by the defendant's cross-examination of the witness. It was a proper subject for limited redirect examination. Therefore, these bills have no merit.
Bill of Exceptions No. 7.
Bill No. 7 was reserved when the trial court overruled a defense motion for a mistrial to the following question asked by the prosecution of one of its witnesses: "Did the witnesses, or the victims of these crimes, did they see . . ."
The facts underlying this bill concern testimony relative to the details surrounding the police station line-up. Basically, there were 10 victims and witnesses of various and sundry crimes viewing two separate line-ups containing police suspects. The victims and witnesses viewed the first line-up in groups of two and then repeated the procedure for the second line-up. The police attempted to keep the witnesses from discussing the line-ups among themselves.
The victim of the instant crime was one of the 10 viewers and made a positive identification of the defendant at the first line-up. She also viewed the second line-up although there was no reason for her to do so.
The question objected to was designed to elicit from the witness facts that would establish that the line-up was fairly conducted, that the persons attempting to make identifications did not suggest the victim's identification of the defendant in this case.
It had been established before the jury that there was but one victim and one suspect for this crime. There was no suggestion that the defendant was implicated in any crime but this one.
The question was not a reference to "another crime [or crimes] committed or alleged to have been committed by the defendant. . ." (emphasis provided) the mention of which by a district attorney requires that a mistrial be ordered, under C.Cr.P. art. 770.
This bill lacks merit.
Bill of Exceptions No. 8.
This bill was reserved when the prosecutor asked of a witness, "Did you tell her that she had identified the proper party?" The argument is that the question suggests a personal knowledge of guilt by the prosecution and thus requires reversal. State v. Cascio, 219 La. 819, 54 So.2d 95 (1951).
That argument is without merit. The question was designed to show that the witness, a police officer conducting the line-up, did not influence or reinforce the victim's identification of the defendant. The question did not imply a personal knowledge of facts that were not before the jury. See State v. Landry, 262 La. 32, 262 So.2d 360 (1972). The bill lacks merit.
Bill of Exceptions No. 9.
This bill was reserved when the trial court made the following comment to Deric Miles, a defense witness, when asking him to speak louder:
"Q. You see those twelve gentlemen sitting there? They've got to hear what you say and decide whether they're going to believe you or not. So, speak up loud enough for everybody to hear you. All right?"
The defendant argues that this remark by the trial court constituted a comment upon the evidence in the presence of the jury in violation of Article 772, C.Cr.P.[2] *502 Specifically, defendant contends that the comment reflected upon the credibility of the witness.
This issue has been presented to this Court on other occasions, and where we have found that the trial court invaded the province of the jury, by directly or indirectly expressing his opinion on the credibility of a witness, we have not hesitated in characterizing such instances as prejudicial error. See State v. Johns, 135 La. 552, 65 So. 738 (1917); State v. Ballou, 140 La. 1086, 74 So. 562 (1914).
But we do not feel that the instant case presents such a situation. The remark was made prior to the resumption of cross-examination by the State after a five minute recess. The trial judge noted that he had been having difficulty hearing the witness, and he doubted whether the jury had been able to hear. Taken in context, the trial court's comment appears to us to have been an attempt to impress upon a soft-spoken witness the importance of speaking loudly enough to be heard by the jury.
This bill lacks merit.
Bill of Exceptions No. 10.
Bill of Exceptions No. 10 was reserved in connection with the cross-examination of the defendant.
The following exchange occurred:
"Q. O.K., Mr. Hatch. Let's go back to the time you were arrested. What date was that?
A. February 19th of '73.
Q. You wasn't arrested on this charge?
A. (The witness did not reply.)
At this point, defense counsel objected to the question and moved for a mistrial. The motion was denied by the trial court and defendant reserved Bill of Exceptions No. 10. The Court did, however, instruct the jury to disregard the question, and the prosecutor abandoned this line of questioning.
Defense counsel argues that under Article 770 of the Code of Criminal Procedure the question propounded by the assistant district attorney was mandatory grounds for a mistrial. Article 770 provides, in pertinent part:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . . . .
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
". . ."
The record reveals the assistant district attorney thought his question was proper for two reasons. First, he thought that the defendant, on direct examination, had stated that he was not arrested on this particular charge. Secondly, the assistant district attorney attempted to justify his question on the basis that he could impeach the defendant by probing into his arrest record.
The prosecutor was mistaken in both regards.
While it was somewhat confusing, the defendant on direct examination stated that he was arrested February 19th for this charge, but that he was not aware of the charge until some months later. Thus, there is no basis for an argument that the defendant himself opened the door to other arrests.
*503 As for the use of other crimes to impeach the defendant's credibility, the Legislature has declared that only convictions, not arrests, may be used. LSA-R.S. 15:495.[3]
Thus, it is apparent that the question was an impermissible one. However, under the jurisprudence of this Court, it does not necessarily follow that reversible error has resulted.
This Court has drawn a distinction between assertive questions and purely interrogatory ones.
Assertive questions are those which place before the jury the details concerning the other crime. For example, in State v. Guillot, 277 So.2d 146 (La. 1973), this Court reversed the conviction due to the following question propounded by the prosecutor to a defense witness:
"Do you know whether or not. . . or rather, don't you know that [the defendant] was involved in an accident when he was drunk about three or four weeks ago?"
This Court held that the trial court erred in failing to grant the mistrial mandated by Article 770.
On the other hand, a purely interrogatory question is one which, while probing for inadmissible evidence, does not present any facts allegedly constituting the other crime to the jury. In State v. Maney, 242 La. 223, 135 So.2d 473 (1961), the following exchange occurred between the assistant district attorney and the defendant:
"Q. Did you know Officer Duncan before?
A. No, sir.
Q. Has he ever had occasion previously to arrest you for anything?"
Before the witness could reply, the defense counsel moved for a mistrial. The trial court refused to grant a mistrial, but instead ruled that the question was improper and instructed the jury to disregard it. This Court held that the ruling by the trial court avoided any error.
The instant case presents a situation almost identical to the one involved in Maney. Therefore we conclude that this bill of exception lacks merit.
Bill of Exceptions No. 11.
Defendant moved for a directed verdict at the close of the state's case. Bill of Exceptions No. 11 was reserved to the trial court's denial of the motion.
A directed verdict of not guilty is appropriate only when the State has produced no evidence to prove a crime or an essential element thereof. Article 778, C. Cr.P., State v. Douglas, La., 278 So.2d 485 (1973). Our review of the record discloses that the motion was properly denied, for the prosecution did present evidence as to the identity of the defendant, as to the theft or taking of $30.00 in money which was in the immediate control of the victim, that the taking occurred while the victim was subjected to force and intimidation (she was tied, gagged, blindfolded and raped), and that defendant was in possession of a dangerous weapon, a knife, at the time of such taking.
This bill lacks merit.
*504 Bill of Exceptions No. 12.
During closing argument, the prosecutor made reference to the fact that the defendant had been convicted of nonsupport of his minor child.
Defense counsel immediately objected to this remark and moved for a mistrial, arguing that the prior conviction, which had been properly elicited during cross-examination of the defendant, could only be used "to test credibility as to whether or not a man will admit that he's ever been convicted of a crime." The trial court declined to declare a mistrial. After reserving a bill of exceptions, defense counsel requested the court to instruct the jury that his interpretation of the use of prior conviction evidence was correct. The trial court then remarked:
"THE COURT: Well, the law permits a witness to be asked if he has ever been convicted of a previous crime. If such evidence is produced, the purpose, the primary purpose of such evidence is to bring this out in regard to the credibility of the witness as to his testimony at the trial. All right, proceed." (emphasis provided)
Defense counsel then encompassed this clarification by the trial court in his bill of exceptions.
We do not find that this bill of exceptions presents reversible error. As noted earlier in this opinion, Article 770 of the Code of Criminal Procedure mandates a mistrial when the district attorney, within the hearing of the jury, refers to "[a]nother crime committed . . . by the defendant as to which evidence is not admissible."
The fact of defendant's nonsupport conviction was not inadmissible evidence, but just the opposite. It was properly elicited, in accord with LSA-R.S. 15:495 (see Footnote 3), when the defendant took the stand to testify in his own behalf. Under the statutory provision, evidence of other crimes is admissible "for the purpose of impeaching the credibility of the witness . . .". And it is the conviction itself, not the mere admission of the conviction, which the statute dictates can be used to shed light on defendant's credibility. It was in an attempt to attack the credibility of the defendant that the assistant district attorney referred to the prior conviction. Such was proper closing argument. See State v. White, La., 301 So.2d 321 (1974).
Furthermore, while the trial court's clarification was not a perfectly correct expression of the law governing the inference to be drawn from evidence of prior criminal activity by the defendant, we do not believe that the defendant was prejudiced by this remark, which in no way indicated to the jury that the evidence of the other conviction could be used as substantive evidence of the defendant's guilt.
This bill has no merit.
Bill of Exceptions No. 13.
This bill was reserved to the denial of defendant's motion for a new trial, the motion being based upon the following provisions of Article 851, C.Cr.P.:
"The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) A bill of exceptions reserved during the proceedings shows prejudicial error;
* * * * * *
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
After careful consideration of defendant's arguments, we conclude that the trial *505 court did not err in denying the motion for a new trial.
This Court has held that a motion for a new trial, premised upon an allegation that the verdict is contrary to the law and the evidence, is concerned with sufficiency of evidence and therefore presents nothing for our review. State v. Plummer, La., 281 So.2d 716 (1973) and authorities cited therein.
Defendant was also not entitled to a new trial under the provisions of Art. 851(2), as our review of his conviction does not demonstrate that any of his bills of exceptions show prejudicial error.
Nor has the defendant convinced us that the "ends of justice" would be served by allowing him a second trial. Art. 851(5). Much of defendant's argument in this regard is based upon the fact that within 12 hours after the 9 to 3 verdict had been rendered, two jurors signed an affidavit stating that they had made an error in voting for conviction.
It is settled that a juror may not impeach the verdict of a jury of which he was a member. LSA-R.S. 15:470. This rule of law has been recognized and followed by this Court for close to 100 years. See State v. Fruge, 28 La.Ann. 657 (1876); State v. Bird, 38 La.Ann. 497 (1886); State v. Cunningham, 123 La. 867, 49 So. 601 (1909); State v. Calloway, 174 La. 134, 140 So. 2 (1932). We are bound, therefore, to ignore the jurors' affidavit.
The supplemental argument presented in support of this contention that justice requires a new trial is concerned with the problem of the identification of the defendant. The victim, positive of her identification of the defendant, persisted in her testimony that her assailant had no beard or mustache on the night of the robbery. The defense, through the introduction of photographs, presented evidence tending to demonstrate that the defendant had a beard and a mustache both 5 days before the incident and 6 days afterward.
It was for the jury to evaluate this evidence. We do not find that this presents the type of aggravated factual situation which, in State v. Randolph, La., 275 So.2d 174 (1973), led in part to our conclusion that the trial court had abused its discretion in refusing to order a new trial.
For the above reasons, we find this bill lacking in merit.
Accordingly the conviction and sentence are affirmed.
BARHAM, J., concurs in decree only.
NOTES
[1] It should be noted that the author is of a contrary view, see State v. Roberts, La., 278 So.2d 56 (1973), and that this issue is currently before the United States Supreme Court in Edwards v. Healy, 415 U.S. 911, 94 S.Ct. 1405, 39 L.Ed.2d 465 (1974).
[2] Art. 772. Comment on facts by judge in jury's presence prohibited

The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
[3] R.S. 15:495. Impeachment by evidence of conviction; condition precedent to proof by others; prohibition against cross-examination as to indictment or arrest

Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein. As amended Acts 1952, No. 180, § 1.