No. 11,907.

STATE OF LOUISIANA VS. STEPHEN BARNES AND MARY RUSSELL.

A simple remark, made by the judge to defendant's counsel, during the progress of the trial, that he seemed "to want no testimony except what suits his side of the case;" and that he propounded to him the question: "Are you afraid of your own witness?" do not amount to a comment upon the testimony, nor the intimation of an opinion in reference to the testimony.

The trial judge is not in duty bound to give any special instruction to a jury which is not applicable to the proven facts in the case; and, in the absence of proof disclosing that two defendants are husband and wife, it would have been improper and misleading to the jury for the judge to have given them instructions with regard to the exercise of coercion and marital influence.

Motions for new trials should contain all the grounds which defendants rely upon to have verdicts set aside. The filing and overruling of one exhausts the right.

ON REHEARING.

REFUSAL TO INSTRUCT JURY AS REQUESTED.

*Breaux, J.:* Had the requested instruction been given the trial judge would have assumed that the defendants were husband and wife.

The trial judge denies that there was any evidence of that fact.

It was a question of fact for the jury, and the trial judge properly declined to assume that there was a marriage.

MARITAL COERCION.

If it be granted that the accused were husband and wife, the doctrine of presumed coercion does not apply in cases of murder.

A PPEAL from the Fifth Judicial District Court for the Parish of Morehouse.  *Richardson, J.*

*M. J. Cunningham,* Attorney General, and *J. P. Madison,* District Attorney, for Plaintiff, Appellee.

*H. Flood Madison* and *William A. Collins, Jr.,* for Defendants, Appellants.

Argued and submitted November 9, 1895.

A rehearing was granted; opinion handed down November 18, 1895.

Argued and submitted on rehearing February 15, 1896.

Opinion on rehearing handed down February 24, 1896.

The opinion of the court was delivered by

WATKINS, J.  The defendants, having been indicted for murder, prosecute this appeal from an unqualified verdict of guilty, without capital punishment, and a judgment sentencing them to lifetime imprisonment.

There are four bills of exception in the record upon which they rely for a reversal of that judgment.

I.

The first bill of exceptions relates to certain alleged improper conduct on the part of the trial judge, it being charged that he made certain remarks to the defendants' attorney and certain comments upon the evidence, both of which had a tendency to prejudice the accused and bring their said attorney into contempt.

The charge made is that, while one of the witnesses for the defendants was under cross-examination by the District Attorney, counsel for the defendants objected to any questions being asked relative to matters about which the witness had not been interrogated in chief, and that, thereupon, the trial judge remarked:

"You seem to want no testimony except what suits your side of the case."  And that the judge again asked, in the same connection and in a few moments afterward: "Are you afraid of your own witness?"

That these statements were made in the presence and in the hearing of the jury; and, for the reasons above assigned, counsel reserved his exception.

The judge assigns the following reasons for his ruling:

"The counsel was incessantly, for some time, making objections of no force, and seemed disposed to prevent, or obstruct, cross-examination of the witnesses by the District Attorney. The questions, if not directly called for by what the witness testified, were pertinent and relevant to answers made by the witnesses to questions propounded by counsel for the accused.

"The counsel displayed so much nervousness as to what the witness might answer, that the court did ask, good naturedly, the question complained of."

These statements of the judge do not amount to a comment upon the evidence, nor did he, in any way, intimate to the jury his opinion in reference to the testimony.

We are unable to discover any injury the defendants have sustained by the remarks of the judge thus jocularly made.

## II.

The second bill of exceptions relates to the judge's declination to give to the jury the following special charge, viz.:

"That if the evidence shows that the wife of the accused (one of the defendants) was acting under his (the other defendant's) direction, and upon his request, in his presence, in attempting to take, or in taking, the life of the deceased, the law presumes that she so acts under marital coercion and influence, and holds her innocent, and the jury should acquit her."

The statement in the bill is as follows, viz.: That one witness had testified " that he had kno ʌ n the accused parties for several years; that they lived as husband and wife, and held themselves out as such in the community where they lived."

And that, in this connection, one of the accused swore as a witness "that while he and the deceased were grappling over a rifle, and the deceased was about to get sole possession of the same, he, the accused (one of the defendants), called to his wife (the other defendant) and said, 'Mollie, pick up the pistol and shoot him (the deceased) or he will kill us all.'"

The judge says of the foregoing statement, that it was "an assumption of fact not justified by the evidence;" and his statement has quite as much pertinency to the testimony of the witness with regard to the marital relations between the two accused as it does

to the statement of the accused with regard to his coercion and undue influence over his alleged wife.

Certainly, we would be unwarranted in assuming, on the face of the judge's statement, that either marital relations did exist between the two defendants, or that undue coercion was proved.

### III.

The next bill of exceptions relates to the judge's refusal to grant the defendants a new trial.

Their motion is grounded on the claim that the verdict of the jury is contrary to the law and evidence; and, further, upon the alleged misdiscretion of the judge in declining to give to the jury the special instructions that are discussed in the previous bill.

Of course, a new trial could not, in the present state of our jurisprudence, be granted on the simple ground that the verdict was contrary to law and evidence.

State vs. Breckenridge, 33 An. 310; State vs. Bird, 38 An. 497; State vs. Butler, 42 An. 229; State vs. Bass, 11 An. 478; State vs. Lennon, 8 Rob. 543. With regard to the special charge, which counsel insist the judge erroneously overruled, he supplements the statement contained in the preceding bill, thus:

"There was no testimony introduced on the trial that Mollie Russell was the wife of Stephen Barnes, the other accused party.

"Barnes, in his testimony in his own behalf, did refer to her in his narrative as his wife; but not in answer to any question as to their relation. The testimony did show that they lived together as man and wife.

"A witness (for) the accused, some twenty-five or thirty years of age, stated that he was the son of Barnes' wife, who is still living."

Conceding that the statement of the judge, in the bill of exceptions reserved to his ruling in reference to the defendant's requested special charge, was inadequate, the supplement thereof in this bill puts the correctness of his ruling beyond question or dispute.

### IV.

After a verdict had been rendered against the accused, their counsel moved to set same aside on several grounds: First, because of the errors that they had assigned in the three bills of exception we have discussed; second, because the verdict is not responsive to the

State vs. Barnes et al. ·

indictment, and the charge of the court; third, because it was reached through error and deception in respect to one of the jurors, who had, in the juryroom, cast his vote in favor of manslaughter only, and declined to vote for any other verdict; but that he was influenced by the false representations of certain other jurors to change his mind, and vote for a verdict of "guilty, without capital punishment," detailing what those false representations were.

From the record it appears that this motion was filed several days subsequent to the final disposition of the motion for a new trial. In view of this fact, we can not understand why the latter motion was entertained at all.

But the judge states in the bill of exceptions that he "declined to hear testimony on said motion and overruled the same for the reason that a juror could not be heard to impeach his own verdict; and (that) on the trial of this cause, when the jury had brought in (their) verdict, said jury, on request of counsel for defendants, were polled, and each (member thereof) said the verdict announced was his verdict," etc.

On this statement the correctness of the judge's declination to hear evidence from the members of the jury in support of the allegations of the motion can not be doubted.

And we are equally clear upon the proposition that defendants' counsel had no right to file the motion at all. Motions for rehearing necessarily come after verdict, and they ought to embrace all the grounds that are relied upon.

An examination of the several bills of exception has satisfied us that the defendants have no well-grounded cause of complaint.

Judgment affirmed.

ON REHEARING.

BREAUX, J. While it is of importance that the court should not invade the province of the jury, and that the judge should not give his opinion upon the facts, though the jury should be left to ascertain the facts for themselves, without a suggestion or influence of any kind, yet courts have not, with any degree of propriety, gone to the length of reversing a verdict for a playful remark to counsel for defendant, such as, "You seem to want no testimony except what suits your side of the case." It was, the judge certifies, an utterance to counsel, made good humoredly, without the least intention of influencing the jury.

In regard to another point raised in argument and urged on the application for a rehearing, the court certifies in the bill of exception that the defendant assumed as a fact that which it was incumbent upon him to prove.

It is manifest that the issue of marriage was not raised in the District Court, and that only incidentally the word wife was used, and that in consequence the court was persuaded that there was no proof that the defendants were husband and wife.    .

In a case of this gravity the question of marriage was of the greatest importance, if one of the defendants relied upon the presumption of marital coercion of the husband as a ground of defence. The inference is unavoidable.   The trial judge was surprised that attention was not in the first place directed to the marriage, if there was a marriage, and, in the second place, to the presumption arising therefrom.   If there was no marriage, as stated by the trial judge, the principle that the court may refuse to instruct the jury on a point upon which there is no evidence,.direct or indirect, applies.

But be this as it may,we do not rest our conclusion entirely upon that ground.   In regard to marital coercion, the presumption of innocence does not necessarily arise in all cases.

Mr. Wharton in his Treatise on Homicides, par. 331, says:   If a husband and wife jointly commit a murder they have been held to be co-principals, as the doctrine of presumed coercion does not apply to murder.

Such is also the conclusion of Archibold, Vol. 1, p. 45: a wife who commits treason, murder or robbery, in the company of her husband, is not to be excused.

Russell on Crimes states the principle:   "If she be guilty of treason, murder or robbery, in company with or by coercion of her husband, she is punishable as much as if she were sole" (p. 17, Vol. 1).

Coercion, says Desty, has  no application to capital offences (par. 16).

There being a  question whether any evidence, such as required, was brought at all to the attention of the jury to prove marriage; and the presumption of coercion, as announced, having been considered, we think that our previous decision should remain as it is.

The requested charge was to have pronounced a verdict of not guilty, if there was marital coercion.   In a case of murder the judge could refuse to so charge.   (There was no question before the court

in regard to a lesser crime of the same nature of a lower degree of homicide.)

For the reasons now given and for those heretofore assigned by us in this case on the original hearing, it is ordered, adjudged and de - creed that the judgment of the lower court is affirmed.